IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDWARD THOMAS,

    Plaintiff,

  v.

ANTHONY HEDGPETH, et al.,

    Defendants.

Case No.: C 12-3071 CW (PR)

ORDER OF DISMISSAL

Docket no. 27

INTRODUCTION

    Plaintiff, a state prisoner incarcerated at California State Prison-Substance Abuse Treatment Facility (CSP), has filed a pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights by prison officials and medical staff at Salinas Valley State Prison (SVSP), where he was formerly incarcerated. In his first amended complaint (1AC), Plaintiff alleges that he is mentally ill and because of his mental health needs and inability to live compatibly with other prisoners he was placed on single-cell status in 2005. However, in 2010, prison officials determined that he no longer was entitled to single-cell housing and required that he be housed with a cell-mate. On April 5, 2013, the Court issued an Order of Service finding that, construed liberally, these allegations were

sufficient to state cognizable Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical needs and safety and a cognizable First Amendment retaliation claim. Doc. no. 10. The Court found that an Equal Protection claim was not cognizable and dismissed it without prejudice. Id. Defendants have filed a motion to dismiss based on res judicata, collateral estoppel, the Rooker-Feldman doctrine, failure to state a claim and qualified immunity. Plaintiff filed an opposition, Defendants filed a reply and Plaintiff filed a "secondary objection" to Defendants' reply which includes requests for sanctions and appointment of counsel. Defendants have not objected to Plaintiff's last filing and the Court considers it in deciding this motion.[1]

For the reasons discussed below, the Court grants the motion to dismiss based on res judicata and, thus, need not address Defendants' other grounds for dismissal.

## BACKGROUND

On September 20, 2011, before Plaintiff filed this federal civil rights action, he filed a petition for a writ of habeas corpus in the Monterey County Superior Court, In re Edward Thomas On Habeas Corpus, case number HC 7507. Request for Judicial Notice (RJN), Ex. A. On March 7, 2012, in a written order, the superior court denied the petition. RJN, Ex. E. Plaintiff then filed a petition for a writ of habeas corpus in the California Court of Appeal, which was summarily denied on May 18, 2012. RJN,

---

[1] Defendants' two requests for judicial notice pursuant to Federal Rule of Evidence 201(b)(2) are granted. Doc. nos. 28 and 39.

2

Ex. G.  On June 15, 2012, Petitioner filed the instant civil rights action.

I. State Court Habeas Petition

In his state court petition, Plaintiff challenged the June 22, 2011 decision made by the SVSP Unit Classification Committee (UCC) which changed his single-cell housing assignment to double-cell status.  Ex. B at 1.[2]  Plaintiff asserted three grounds for challenging the UCC's decision that he was eligible to be double-celled: (1) his mental illness placed himself and any potential cell-mate in imminent danger; (2) he wanted to prevent himself from being subject to disciplinary action in the event his cell-mate brought contraband into the cell, which might lead to a physical confrontation and potential serious physical harm or fatality; and (3) SVSP failed to follow the procedures set forth in the Department Operations Manual (DOM) which requires potential cell-mates to be given the opportunity to speak with each other to determine if they would be compatible cell-mates prior to being housed together.  RJN, Ex. E.  Petitioner identified his inmate grievance submitted against Defendants, Log No. SVSP 11-00136, in which he challenged the UCC's June 22, 2010 decision to remove him from single-cell status.  Ex. A at 6.  Plaintiff sought a court order preventing him from a double-cell assignment.  Id. at 9.

On December 6, 2011, the Monterey County Superior Court ruled that Plaintiff's third ground for relief failed because he failed to set forth a factual basis for the claim that the CDCR had

---

[2] Page numbers refer to the numbers on the Court's electronic docketing system.

violated procedures set up in the DOM. RJN, Ex. B at 3. Before it ruled on Plaintiff's first and second claims, the court requested that the respondent file an informal response addressing the questions: (1) at any time or at any CDCR institution, has there been documentation in Plaintiff's central file showing that he had been victimized by a prior cell-mate; and (2) was this factor considered by the UCC at the June 22, 2010 hearing? Ex. B at 3. The court also requested that the respondent provide the court with a complete copy of the Classification Chrono dated June 15, 2010.[3]

Both the respondent and Plaintiff filed informal reply briefs. Exs. C & D. With his reply, Plaintiff submitted declarations from two inmates, who each said he had been celled with Plaintiff for a while, but Plaintiff's psychological symptoms, such as talking to himself, hallucinating and pacing the floor at night, made it impossible to continue to be his cell-mate. Ex. D at 12-16.

After review and consideration of the pleadings and documentation presented by the parties, the Monterey County Superior Court found that Plaintiff "failed to state a prima facie case for relief." Ex. E at 4. The court applied both California and federal authority holding that:

> A classification decision must be supported by "some evidence," and the court may intervene only if a prison official's classification decision is arbitrary, capricious, irrational or an abuse of discretion. Under the "some

---

[3] A "chrono" is an institutional documentation of information about inmates and their behavior. In re Stoneroad, 215 Cal. App. 4th 596, 606 n.4 (2013) (citing 15 Cal. Code. Regs. § 2000 et seq.).

4

>   evidence" standard, the requirements of due process are satisfied as long as there is "some basis in fact" for the decision.

Ex. E at 4-5 (citing In re Wilson, 202 Cal. App. 3d 661, 666-67 (2002); Superintendent v. Hill, 472 U.S. 445 (1985)).

The court reviewed the record and found that, in making its decision to approve Plaintiff for double-cell status, the UCC relied on the evidence that Plaintiff had no history of in-cell violence, sexual predatory behavior or victimization. Id. at 5. These were factors that must be considered in determining whether an inmate could be double-celled. Id.

The court also addressed Plaintiff's argument that the UCC had not considered his mental health illness prior to changing him to double-cell status. Id. The court noted that the state regulations only required a review of mental health issues if a recommendation for single-cell status was made by a clinician, that Plaintiff had not alleged that such a request had been made nor had he raised the issue and that, in fact, the Psychiatric Services Unit Institutional Classification Committee had determined that Plaintiff was eligible for double-cell status. Id. The court also noted that the UCC was aware of Plaintiff's mental health issues because his record showed that he had been appointed a staff assistant and was taking psychotropic medication. Id. Based on its review of the record, the court determined that Plaintiff had "failed to show that the committee's decision was arbitrary, capricious, or an abuse of discretion." Id. Accordingly, the court denied the petition. Id. at 6.

II. Allegations in Federal Civil Rights Complaint

Plaintiff's 1AC names ten Defendants and contains the following allegations against them.

5

When Plaintiff was transferred to SVSP on March 30, 2010, Acting Facility Captain-Correctional Counselor R. Burgh[4] and Acting Correctional Counselor D. Garcia kept Plaintiff on single-cell status due to Plaintiff's mental health issues and his classification chrono placing him on single-cell status, which he had since May 19, 2005.

However, at a June 22, 2010 UCC hearing, Defendant Burgh and Correctional Counselor J. Martin removed Plaintiff from his single-cell status.  1AC at 11.  On January 8, 2011, Plaintiff filed an administrative appeal, Log No. SVSP 11-00136, challenging the UCC's decision to place him on single-cell status. Id. at 12. On February 9, 2011, this appeal was denied at the first level of review by Defendant Burgh and Captain D. Muniz.  Id.

On February 17, 2011, Plaintiff resubmitted his appeal to the second level of review.  Id.  On April 12, 2011, Chief Deputy Warden A. Solis denied it at the second level.  Id. at 13.  On April 14, 2011, Plaintiff resubmitted this appeal to the third level of review.  By this appeal, Warden Hedgpeth, Chief Deputy Warden L. Trexler, Captain N. Walker and Defendant Burgh were "made aware" of Plaintiff's concern that double-celling would put his life and well-being in jeopardy because of his mental health problems.  Id. at 13.

On July 14, 2011, Plaintiff's appeal at the director's level was denied.  Id. at 14.

On October 19, 2011, Plaintiff was forced to be celled with inmate William Swanigan.  Nine days later Plaintiff had been

---

[4] R. Burgh was both Acting Facility Captain and Acting Correctional Counselor.

6

involved in a physical altercation and was re-housed. On December 30, 2011, Plaintiff was forced to be celled with inmate Darrel Hospedale without first being able to speak with him to determine if they would be compatible as cell-mates. Id. at 14-15.

At some point in time, Plaintiff notified Mental Health Psychiatric Technician Bonilla about his mental health issues and double-celling producing a potentially violent situation. Id. at 15. Defendant Bonilla advised Plaintiff that the SVSP mental health department "no longer makes recommendations for triple CMS (CCCMS) inmates to be housed 'single celled' . . . and has not done so since 2005." Id.

Plaintiff also makes allegations regarding his gang member status. On April 22, 2009, Plaintiff filed a 602 appeal challenging his classification as a gang member which was granted by Defendants Hedgpeth and Burgh. Id. at 23. As a result, all gang membership and gang status labels were to be removed from Plaintiff's Central File. Id. However, even though the appeal was granted, each Defendant has accused Plaintiff of being a gang member and they have continued to house him with a cell-mate who is a gang member or associate, which could place Plaintiff in a volatile situation. Id.

Plaintiff also alleges, "Because of prior litigation and current litigation against prison staff, the decision to remove [Plaintiff] from his single cell status was done as a retaliatory measure to cause Plaintiff injury . . ." Id. at 24.

Plaintiff sues Defendants in their individual and official capacities and seeks injunctive relief and damages. Id. at 30-31.

7

DISCUSSION

Defendants argue that litigation of Plaintiff's claims is barred by res judicata (claim preclusion) and litigation of Plaintiff's issues is barred by collateral estoppel (issue preclusion) based on the fact that Plaintiff litigated these same claims and issues in his state habeas proceeding.

Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect as the state court judgment would receive by another court of that state. 28 U.S.C. § 1738; Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004). Section 1738 requires federal courts to apply the rules chosen by the state which issued the judgment to determine whether claim or issue preclusion applies to a second-filed federal case. Noel v. Hall, 341 F.3d 1148, 1166 (9th Cir. 2003). There is no exception to the rules of issue and claim preclusion for federal civil rights actions under 42 U.S.C. § 1983. Clark v. Yosemite Community College Dist., 785 F.2d 781, 788 n.9 (9th Cir. 1986). A § 1983 claim brought in federal court is subject to principles of issue and claim preclusion by a prior state court judgment. Allen v. McCurry, 449 U.S. 90, 97-98 (1980) (issue preclusive effect in federal court of state proceedings is same as that accorded in state's own courts); Silverton v. Dep't of Treasury, 644 F.2d 1341, 1347 (9th Cir. 1981) ("because of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards"); Clark, 785 F.2d

8

at 786-87 (under res judicata, state judgment bars relitigation of same causes of action in federal § 1983 action).

Under California law, claim preclusion applies when: (I) the party to be precluded was a party or in privity with a party to the previous adjudication; (II) the second lawsuit involves the same "cause of action" as the first; and (III) there was a final judgment on the merits in the first lawsuit. San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2009). As a result, a "plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not alleged in the prior action, or by pleading a new legal theory." Gonzales v. California Dep't of Corrections, 782 F. Supp. 2d 834, 838 (N.D. Cal. 2011).

I. Identity or Privity of Parties

For res judicata purposes, if the parties in the second lawsuit are not the same as in the original lawsuit, privity is determined based on "whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion." People v. Drinkhouse, 4 Cal. App. 3d 931, 937 (1970). It is also defined as "a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights." Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n, 60 Cal. App. 4th 1053, 1069 (1998).

In both the state habeas proceeding and this federal civil rights action, Plaintiff alleges that he has wrongfully been classified as eligible for double-cell status when he should be on

9

single-cell status because of his mental disability.  In both proceedings, Petitioner identified inmate grievance, SVSP log No. 11-00136, as support for his claim.  This grievance seeks reinstatement of his single-cell assignment that was discontinued at the June 22, 2010 UCC hearing, attended by Defendants Burgh and Martin, and an order preventing staff from assigning him a cell-mate due to his mental disability.  The grievance also mentions some of the named Defendants in this action.  For instance Defendants Burgh and Muniz responded to Plaintiff's inmate appeal of the June 22, 2010 UCC decision at the first level of review and Defendant Solis responded to the appeal at the second level of review.

Furthermore, even though the respondent in a habeas proceeding is usually the warden of the petitioner's penal institution, where a state habeas petition and a federal civil rights claim challenge the same wrong to the same plaintiff by the same prison officials, there is privity between the parties.  See Gonzales, 782 F. Supp. 2d at 839.  This applies here, where Plaintiff named Warden A. Hedgpeth as the respondent in his habeas petition.  See RJN, Ex. A.

Plaintiff does not argue that privity does not exist between the defendants in both actions.

Thus, the parties involved in both proceedings are either identical or substantially identical under California law so as to be in privity with each other for purposes of res judicata.

II. Same Cause of Action

For res judicata purposes, California law defines a "cause of action" by analyzing the primary right at stake.  San Diego Police Officers' Ass'n, 568 F.3d at 735.  This means that:

10

> if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief, and/or adds new facts supporting recovery.

Id. (quoting Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170 (1983).

The California Supreme Court has defined "cause of action" and "primary right" as follows:

> A "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. A pleading that states the violation of one primary right in two causes of action contravenes the rule against "splitting" a cause of action. . . . The primary right is simply the plaintiff's right to be free from the particular injury suffered. It must therefore be distinguished from the legal theory on which liability for that injury is premised.

Crowley v. Katleman, 8 Cal. 4th 666, 681 (1994) (emphasis in original).

The primary right claimed in Plaintiff's state petition and this complaint is the same--it is the constitutional right to be correctly classified as not being capable of sharing a cell with another prisoner while housed at SVSP. Plaintiff alleged in both proceedings that he was improperly given a double-cell assignment by the UCC committee and that decision places him and any potential cell-mate in danger of injury or discipline for any violence that may occur between Plaintiff and the cell-mate. The corresponding duty on Defendants' part is to classify Plaintiff correctly so that he and a potential cell-mate will not physically harm each other. The alleged harm is the potential physical injury that will result when Plaintiff is housed with an

11

"incompatible" cell-mate and the discipline that will result when Plaintiff refuses to be housed with an "incompatible" cell-mate. The fact that Plaintiff submitted the same prisoner grievance and inmate declarations in support of his claims in both proceedings supports the finding that he is claiming a violation of the same right and same injury in both proceedings.

Plaintiff argues that the causes of action are different in the two proceedings because in the state petition he did not allege that Defendants violated any of his constitutional rights, including the violation of his First Amendment rights based on Defendants' retaliation against him.

The state habeas court construed Plaintiff's claim as alleging a due process violation because due process jurisprudence afforded the best theory for overturning a ruling of the classification committee. See In re Wilson, 202 Cal. App. 3d 661, 666-67 (1988) (court may intervene in prison classification decision only if the decision is arbitrary, capricious, irrational or an abuse of discretion). Citing the United State Supreme Court case, Superintendent v. Hill, for the proposition that a decision of the UCC must be supported by some evidence to satisfy due process, the court found that there was some evidence to support the UCC's decision that Plaintiff was qualified for double-cell status and, thus, no due process violation had been committed.

Because res judicata bars not only the due process claim that was litigated, but all the claims that could have been litigated based on the primary right alleged in the first proceeding, Plaintiff's Eighth Amendment and First Amendment claims are also barred. They are based on the violation of the same primary right

litigated in the state habeas proceeding--to be classified correctly as not capable of sharing a cell with another inmate. See Gonzales, 782 F. Supp. 2d at 841 (res judicata barred not only due process claim based on improper gang validation litigated in state habeas proceeding, but all new legal theories and claims stemming from the same cause of action, such as First Amendment and Equal Protection claims based on same right to be free from improper gang validation).

In his civil rights case, Plaintiff also alleges that Defendants are placing him in imminent danger by housing him with cell-mates who are gang members or disruptive group members. However, if the cause of action test is satisfied, the same primary right is at stake, even if in the later suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. See Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009) (quoting City of Martinez v. Texaco Trading & Transp., Inc., 353 F.3d 758, 762 (9th Cir. 2003)). The fact that Plaintiff adds new facts in his complaint-- that Defendants are placing him in imminent danger by double-celling him with dangerous gang members--does not change the primary right alleged, that the UCC's decision to double-cell him is placing him in imminent danger of harm by allowing him to be double-celled with "incompatible" inmates.

III. Final Judgment on the Merits

As mentioned above, a decision actually rendered in a state habeas proceeding, after a full and fair hearing, precludes the litigation of the same claims and issues in a federal civil rights case. See Hawkins v. Risley, 984 F.2d 321, 325 (9th Cir. 1993);

13

Silverton, 644 F.2d at 1347.  However, res judicata does not apply "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue . . . Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 480-81 & n.22 (1982).  Where a federal court is considering the preclusive effect of a state court judgment under 28 U.S.C. § 1738, the "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." Id. at 481.

Plaintiff argues that the state decision on his habeas petition was not a final judgment on the merits.  First, Plaintiff argues that it was not a final judgment because he did not "exhaust the habeas corpus action due to the matter(s) could be processed all the way up the judicial process to the Ninth Circuit Court of Appeals [sic]."  Opp'n at 2, 9.

Plaintiff filed a habeas petition in the California Court of Appeal, which denied it on May 18, 2012.  RJN, Ex. G.  Plaintiff could have filed his petition in the California Supreme Court but did not do so.  California's timeliness rule bars habeas petitions that are filed after "substantial delay." King v. LaMarque, 464 F.3d 963, 966 (9th Cir. 2006).  Although there are no fixed standards for determining what period of time constitutes substantial delay, see id., it is likely that any petition Plaintiff files now would be considered substantially delayed.  Therefore, it is unlikely that the California Supreme Court would rule on the merits of Plaintiff's petition.  And, although

14

Plaintiff argues that he can appeal his petition to the Ninth Circuit, Plaintiff may only appeal to the Ninth Circuit a judgment from a federal district court, not a judgment from the state courts. Thus, Plaintiff's argument that the superior court's ruling is not final because he still may appeal lacks merit.

Plaintiff argues that he did not have a full and fair opportunity to litigate his claim in the state court. The Court finds that he did. After Plaintiff filed his petition in the state superior court, the court requested an informal response from the respondent and ordered the respondent to provide the court with a complete copy of the June 15, 2010 UCC chrono of Plaintiff's case. The respondent complied and Plaintiff filed an informal response to the respondent's response. Therefore, when the superior court rendered its decision, it had before it two briefs filed by Plaintiff, the respondent's informal response, the UCC chrono and decision and Plaintiff's administrative grievance. The state superior court considered the arguments raised in Plaintiff's habeas petition and informal response and, after review, found that some evidence existed to support the UCC's decision to approve Plaintiff for double-cell status. See RJN, Ex. E. at 3-5. This qualifies as a full and fair opportunity to litigate the issues as required by Kremer, 456 U.S. at 480-81.

Plaintiff next argues the state court decision was not a final judgment because he was not allowed to argue the case personally in court and could only submit his arguments on paper. However, a hearing before the court is not necessary to satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause. As stated by the United States Supreme Court, "no single model of procedural fairness, let alone a particular

15

form of procedure is dictated by the Due Process Clause. . . . The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Kremer, 456 U.S. at 483.  Here, Plaintiff had the opportunity to file two briefs in support of his petition, to submit evidence with both briefs and to refute the arguments and evidence proffered by the respondent.  Under the circumstances of a habeas petition, where the petitioner is incarcerated, a hearing before the court is not required in order to provide the petitioner with a full and fair opportunity to present his arguments.  Plaintiff had that opportunity before the state superior court.

Next, Plaintiff argues that he did not seek monetary compensation in his state habeas proceeding, while he does in this federal civil rights case.  Although damages are unavailable in habeas proceedings, this does not exempt Petitioner's state habeas case from the reach of res judicata.  See City of Los Angeles v. Superior Court, 85 Cal. App. 3d 143, 151 (1978) (litigant "cannot avoid impact of rule against splitting causes of action by choosing for his first foray a tribunal of limited jurisdiction.").  "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief. . . . A predictable doctrine of res judicata benefits both the parties and the courts because it seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration." Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 897 (2002) (citations and internal quotation marks omitted, emphasis in original).  Therefore, all claims based on the same cause of action must be decided in a

16

United States District Court
For the Northern District of California

single suit; if not brought initially, they may not be raised at a later date. Id. In Mycogen, the court held that res judicata barred a plaintiff who prevailed in an action for declaratory relief and specific performance of a contract from pursuing damages in a subsequent action for breach of that same contract. Id. at 904.

Based on the foregoing, the denial of Plaintiff's state habeas decision was a final judgment on the merits.

For all the above reasons, Defendants' motion to dismiss the complaint because it is barred by res judicata is GRANTED. Thus, the Court need not address Defendants' other arguments for dismissal based on collateral estoppel, the Rooker-Feldman doctrine, failure to state a claim and qualified immunity.

Given this ruling, Plaintiff's requests for sanctions and appointment of counsel are denied as moot.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Defendants' motion to dismiss based on res judicata is GRANTED. Doc. no. 27.

2. The Clerk of the Court shall enter judgment and close the file.

3. This Order terminates docket number 27.

IT IS SO ORDERED.

Dated: 1/31/2014

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE